**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Richard Sagarnaga Valencia, | No. CV-24-02670-PHX-SMB |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

The Court now considers Plaintiff Richard Valenica's appeal from the Social Security Administration's ("SSA") denial of Plaintiff's application for Social Security Disability Insurance ("SSDI") benefits. (Doc. 8-3.) The Court reviewed the briefing, the Administrative Record (Doc. 8), and the Administrative Law Judge's ("ALJ") decision (Doc. 8-3 at 18–34). The Court will **affirm** the ALJ's decision for the following reasons.

## I. BACKGROUND

Plaintiff applied for SSDI benefits on October 6, 2021. (Doc. 8-3 at 18.) Plaintiff alleged his disabilities began on October 30, 2019, which he amended to November 1, 2021. (*Id.*) Plaintiff's application was denied as was his request for reconsideration. (*Id.*) A hearing was then held before an ALJ. (*Id.*)

The ALJ determined that Plaintiff suffered from the following severe impairments: obesity, hypertension, status-post arthroscopic partial medial meniscectomy, degenerative disc disease, osteoarthritis of the knees, osteoarthritis of the hands, carpal tunnel syndrome, and calcaneal spur—none of which met or medically equaled a listed impairment. (*Id.*

at 21–22.)   Despite Plaintiff's impairments, the ALJ concluded that Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) with some limitations.  (*Id.* at 25.)

The ALJ thus denied Plaintiff's application.  (*Id.* at 34.)  Plaintiff applied for a review of the ALJ's decision, which was denied. (*Id.* at 2.)  Plaintiff now seeks this Court's review pursuant to 42 U.S.C. § 405(g).  (Doc. 1 at 1.)  Plaintiff asks this Court to consider whether the ALJ erred by: (1) rejecting the assessment of an agency examining provider; and (2) rejecting Plaintiff's subjective symptom testimony.  (Doc. 12 at 1–2.)

## II.   LEGAL STANDARD

In determining whether to reverse an ALJ's decision, the Court reviews only those issues raised by the party challenging the decision.  *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).  An ALJ's factual findings "'shall be conclusive' if supported by 'substantial evidence.'"  *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (quoting 42 U.S.C. § 405(g)).  Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole.  *Id.*  Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  The Court will not reverse for harmless errors. *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).  A Court must review "only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely."  *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process.  20 C.F.R. § 404.1520(a).  The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five.  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  At the first step, the ALJ determines whether the claimant is engaging in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(i).  If so, the claimant is not disabled and the inquiry ends.  *Id.*  At step two, the ALJ determines whether the claimant has a severe medically determinable physical or mental impairment.

20 C.F.R. § 404.1520(a)(4)(ii).  If not, the claimant is not disabled and the inquiry ends.  *Id.*  At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404.  *See* 20 C.F.R. § 404.1520(a)(4)(iii).  If so, the claimant is automatically found to be disabled.  *Id.*  If not, the ALJ proceeds to step four.  At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work.  20 C.F.R. § 404.1520(a)(4)(iv).  If so, the claimant is not disabled and the inquiry ends.  *Id.*  If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work based on the claimant's RFC, age, education, and work experience.  20 C.F.R. § 404.1520(a)(4)(v).  If so, the claimant is not disabled.  *Id.*  If not, the claimant is disabled.  *Id.*

### III.   DISCUSSION

Plaintiff argues that the ALJ "committed materially harmful error by rejecting the assessment of" Christine Joy, PA ("PA Joy").  (Doc. 12 at 9.)  Plaintiff also argues that the ALJ "committed materially harmful error by rejecting Valencia's symptom testimony in the absence of specific, clear, and convincing reasons supported by substantial evidence in this record as a whole."  (*Id.* at 13.)  The Court considers each argument in turn.

**A. The ALJ Did Not Err in Weighing Medical Source Opinion Evidence**

The Court first addresses Plaintiff's argument that "ALJ committed materially harmful error by rejecting the assessment from PA Joy without providing sufficient explanation supported by substantial evidence, including failing to explain the consideration of the supportability and consistency factors with citation to substantial evidence under the regulations for evaluation of medical source opinions."  (*Id.* at 9.)

1. *Legal Standard*

An ALJ "must consider all medical opinion evidence."  *Tommasetti*, 533 F.3d at 1041 (citing 20 C.F.R. § 404.1527(b)).  "Where an ALJ does not explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting one medical opinion over another, he errs."  *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).  The ALJ accords

"controlling weight" to a treating doctor's medical opinion so long as it is supported by medically acceptable diagnostic techniques and is not inconsistent with other substantial evidence. *See* 20 C.F.R. § 404.1527(c)(2); *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). If the opinion is not accorded controlling weight, then the ALJ looks to several other factors to determine how much weight it should have, including evidence supporting the treating doctor's opinion and the consistency of the opinion. *Id.* "[A]n ALJ may disregard a medical opinion that is brief, conclusory, and inadequately supported by clinical findings." *Britton v. Colvin*, 787 F.3d 1011, 1012 (9th Cir. 2015).

An ALJ "may only reject a treating or examining physician's uncontradicted medical opinion based on 'clear and convincing reasons.'" *Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1164 (9th Cir. 2008) (quoting *Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir. 1995)). "Where such an opinion is contradicted, however, it may be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* An ALJ meets this standard by "setting out a detailed and thorough summary of the facts and conflicting medical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

Claims filed on or after March 27, 2017, are subject to amended regulations for evaluating medical evidence. *See* Revisions to Rules Regarding Evaluations of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017) (codified at 20 C.F.R. pts. 404 & 416). Here, Plaintiff filed his/her claim in 2021, therefore these new regulations apply. In applying these new regulations, the Ninth Circuit held that an ALJ "must 'articulate . . . how persuasive' it finds 'all of the medical opinions' from each doctor or other source, and 'explain how [it] considered the supportability and consistency factors' in reaching these findings." *See Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) (citing 20 C.F.R. § 404.1520c(b)(2)) (internal citation omitted). Supportability refers to the extent to which a "medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence'" while consistency refers to the "extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in

- 4 -

the claim.'" *Id.* (quoting 20 C.F.R. § 404.1520(c)(1) – (2)).

2. *Christine Joy, PA*

In June 2022, PA Joy conducted a consultative medical examination of Plaintiff. (Doc. 8-3 at 30.)  PA Joy opined that "[o]ther than the claimant's subjective complaints. the physical exam was unremarkable." (Doc. 8-10 at 103.)  Specifically, PA Joy opined:

> The claimant presented with a BMI of 53.0. He had pain with palpation of the back and the paravertebral muscular bundle and antalgic gait, and while he was able to stoop, he did so with difficulty, and he could not safely complete balance testing due to deconditioning and pain.  Decreased sensation to touch in the bilateral fingers. Additionally, while the claimant was able to pick up small coins and screw a nut onto a bolt with both hands, he did so with difficulty, and based on the claimant's presentation, Ms. Joy assessed bilateral knee condition, carpal tunnel, back condition, left foot condition, obesity, and limited mobility. However, the claimant denied that his alleged impairments had a significant effect on his activities of daily living, and he advised he was able to perform self-care activities including meals, hygiene, and light housework. According to Ms. Joy, the claimant was in no acute distress. His lungs were clear to auscultation with full chest excursion and normal breath sounds, and heart sounds, rate, and rhythm with normal. He had 5/5 strength in all four extremities as well as 5/5 grip strength bilaterally with normal muscle bulk without atrophy in the lower extremities and normal deep tendon reflexes. Additionally, a detailed evaluation of the claimant's lumbar spine was normal including no radicular pain with straight leg-lift less than 60 degrees bilaterally and no shooting pain down the surface of the leg with hip flexion and knee extension in the sitting position with dorsiflexion of the foot, with the claimant able to stand, walk to, get on, and sit on the exam table without use of any assistive device (2F).

(*Id.* at 30; Doc. 8-10 at 100–04.)

The ALJ found PA Joy's assessment "partially persuasive overall." (Doc. 8-3 at 32.)  Ultimately, the ALJ did not agree with PA Joy's "finding that the claimant could occasionally reach, handle, finger and feel, while she noted decreased sensation." (*Id.*)  The ALJ noted that PA Joy "noted the claimant had 5/5 strength in all four extremities as well as 5/5 grip strength bilaterally, and that he was able to pick up small coins and screw a nut onto a bolt with both hands, albeit with difficulty." (*Id.*)  The ALJ also noted that "in her treatment notes from follow-up with the claimant in May 2021, Ms. Barnwell noted the claimant had declined to have carpal tunnel syndrome surgery, and that he was more

concerned about left knee pain." (*Id.*)  The ALJ also pointed to the "Physical Residual Functional Capacity assessments completed by State agency medical consultants Nadine Keer, D.O., in August 2022, and Carol Eades, M.D., in February 2023."  (Doc. 8-3 at 32.) Both doctors opined that Plaintiff could "frequently handle, finger, and feel with the right upper extremity." (*Id.*; Doc. 8-4 at 6, 15.)  Thus, the ALJ found that "the claimant can frequently reach, handle, finger, and feel" as opposed to being able to "occasionally" do so. (*Id.*)

Plaintiff claims that the the ALJ failed to provide a rational explanation supported by substantial evidence as to why the opinion from the examining physician was partially persuasive and failed to articulate and explain the ALJ's rationale to reject the medical opinions by addressing relevant objective evidence and explanations that support and/or are consistent with the medical opinions being evaluated.  (Doc. 12 at 11.)  Plaintiff exclusively focuses on the ALJ "rejecting" PA Joy's conclusions regarding Plaintiff's "reaching and manipulative limitations." (*Id.* at 10.)  Plaintiff contends that the ALJ "cherry picked" PA Joy's assessment and thus substituted her own opinion for that of PA Joy's. (*Id.*)  Plaintiff also argues that "[i]nstead of relying on the entirety of PA Joy's assessment, the ALJ found the opinions from the agency nonxamining [sic] reviewers persuasive." (*Id.*)

The ALJ reasonably found that PA Joy's conclusion was partially persuasive.  To start, the ALJ did not patently reject PA Joy's conclusions.  Instead, the ALJ found that Plaintiff could make "frequent use of his upper right extremity" as opposed to the "occasional use" found by PA Joy. (Doc. 8-3 at 32.)  That aside, the ALJ's conclusion is not facially incongruent with PA Joy's own findings that that Plaintiff "had 5/5 strength in all four extremities as well as 5/5 grip strength bilaterally, and that he was able to pick up small coins and screw a nut onto a bolt with both hands, albeit with difficulty." (Doc. 8-3 at 32; Doc. 8-10 at 102.)

Additionally, the ALJ reasonably relied on the Physical Residual Functional Capacity assessments completed by State agency medical consultants. (Doc. 8-3 at 32.)

- 6 -

Although the examining physician's opinion is generally afforded more weight than a non-examining physician's, "a non-examining physician's opinion may nonetheless constitute substantial evidence if it is consistent with other independent evidence in the record." *Quintana v. Comm'r of Soc. Sec. Admin.*, No. CV-17-03836-PHX-BSB, 2019 WL 357929, at *5 (D. Ariz. Jan. 29, 2019). The ALJ noted that Dr. Eades and Dr. Keer both "reviewed the available evidence to determine whether the claimant was physically disabled under Social Security regulations, and they identified specific evidence in support of their assessments." (Doc. 8-3 at 32; Doc. 8-4 at 3, 12.) These doctors' conclusions that Plaintiff could make frequent use his right arm is consistent with some of PA Joy's discrete findings. (Doc. 8-10 at 102.) Additionally, these doctors' conclusions do not directly conflict with PA Joy's conclusions; instead, these doctors' conclusions differ in degree rather than kind.

Finally, the ALJ reasonably relied on Plaintiff's decision not to pursue carpal tunnel syndrome surgery. (Doc. 8-3 at 32.) "[I]f a claimant complains about disabling pain but fails to seek treatment . . . [a]n ALJ may use such failure as a basis for finding the complaint unjustified." *Chaudhry v. Astrue*, 688 F.3d 661, 672 (9th Cir. 2012). The ALJ cites to Maria Barnwell, PA's notes in which she noted that Plaintiff was advised to have carpal tunnel surgery, but that Plaintiff declined. (Doc. 8-10 at 81.)

Ultimately, if evidence is "susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). The ALJ rationally interpreted and relied on substantial evidence in weighing PA Joy's medical source opinion, and thus did not err by partially adopting that opinion.

**B. The ALJ Provided Clear and Convincing Reasons for Discrediting Plaintiff's Symptom Testimony**

The Court next addresses Plaintiff's assertion that the "ALJ committed materially harmful error by rejecting Valencia's symptom testimony in the absence of specific, clear, and convincing reasons supported by substantial evidence in this record as a whole." (Doc. 12 at 13.)

1. *Subjective Testimony Legal Standard*

In assessing the credibility of a claimant's subjective symptom testimony, an ALJ must engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (citation modified). If there is such objective evidence, and "no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear and convincing reasons for doing so." *Id.* (citation modified). "The standard isn't whether [the] court is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022). When assessing witness credibility, an ALJ may consider "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citation modified).

2. *Analysis*

Here, the ALJ noted that Plaintiff "identified bilateral knee condition, carpal tunnel syndrome, back condition, left foot condition, obesity, limited mobility, and high blood pressure as limiting his ability to work." (Doc. 8-3 at 26.) Plaintiff also testified that "he was five feet eleven inches tall and that he weighed 348 pounds, resulting in a body mass index (BMI) of 48.5" which qualifies as "extreme obesity." (*Id.*) Plaintiff "identified 'bad knees' requiring surgery that he could not undergo until he lost weight, carpal tunnel syndrome, and heel spurs as limiting his ability to work." (*Id.*) Plaintiff "also advised that while he was able to perform housework and yardwork, he could do so only by 'constantly sitting down' due to knee pain, and further indicated he had difficulty lifting, squatting,

bending, standing, reaching, walking, sitting, kneeling, climbing stairs, completing tasks, and using his hands." (*Id.*) Plaintiff consistently reported the worsening of all these conditions. (*Id.*)

The ALJ continued, noting that "[a]t the hearing, the claimant stated he could not sustain competitive employment due to moderate to severe osteoarthritis of the bilateral knees with associated crepitus and antalgic gait status-post left knee surgery in October 2021, pain and numbness of the bilateral hands with associated difficulty performing manipulative activities bilaterally; degenerative disc disease of the lumbar spine with moderate central canal stenosis at L2-3 and straight leg raise positive on exam; and bone spurs in his bilateral feet." (*Id.*) The ALJ concluded that Plaintiff's "impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (*Id.*) Plaintiff notes that his "pain at his knees, hands, feet, and back are the focus of this appeal." The Court analyzes each symptom in turn. However, the Court begins with the ALJ's findings that support discrediting Plaintiff's testimony regarding the severity of each of his symptoms.

To start, the ALJ did not wholly discredit Plaintiff's testimony. Instead, the ALJ found that "the record does not support a finding that the claimant is precluded from performing all work." (Doc. 8-3 at 31.) The ALJ supported this conclusion by noting that PA Joy conducted a consultative medical exam in which Plaintiff "denied that his alleged impairments had a significant effect on his activities of daily living, and he advised he was able to perform self-care activities including meals, hygiene, and light housework." (*Id.* at 29; Doc. 8-10 at 101.) The ALJ also noted:

> Aside from the medical evidence, other factors detract from the claimant's allegations. In the function report from April 2022, the claimant advised he had no problem performing  activities of personal care; that he prepared himself simple meals, used Uber to get to doctor appointments, watched television, and shopped in stores for at least one hour once a month; and that he was able to go out alone and do housework and yardwork with frequent breaks to sit down, and he made generally consistent statements in the

function report completed by the claimant the following December (6E; 11E). Additionally, at the hearing, the claimant testified that he had lost about 70 pounds with use of phentermine, which he received through a weight loss program, that he used public transportation, shopped for groceries, and took out the trash, mopped, and vacuumed with breaks, and that his antihypertensive medication controlled his blood pressure. The undersigned also notes that while the claimant testified at the hearing that he had been advised to use a cane, there is no mention of a cane in the current medical record.

(Doc. 8-3 at 29–30.)  The foregoing lends support to the ALJ not fully crediting Plaintiff's testimony regarding the severity of his symptoms.  Indeed, "[d]aily activities are a proper basis supporting an adverse credibility determination where they are incompatible with the severity of symptoms alleged or where a claimant is able to spend a substantial part of [his] day engaging in pursuits involving the performance of physical functions that are transferable to a work setting."  *Lacy v. Comm'r of Soc. Sec. Admin.*, No. CV-21-01908-PHX-JAT, 2023 WL 2624459 (D. Ariz. Mar. 24, 2023) (citation modified).

Additionally, the ALJ made specific findings supported by clear and convincing reasons to discredit Plaintiff's testimony regarding the severity of his carpal tunnel.  The ALJ concluded that "while the claimant was diagnosed with carpal tunnel syndrome, his only treatment was with injections, and he worked as a laborer after this treatment."  (*Id.* at 31, 46–47).  Additionally, the ALJ noted that Plaintiff "denied that his alleged impairments had a significant effect on his activities of daily living, and he advised he was able to perform self-care activities including meals, hygiene, and light housework."  (Doc. 8-3 at 30; Doc. 8-10 at 101.)  The Court notes that "daily activities undertaken by the claimant can be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment."  *See Robertson v. Comm'r of Soc. Sec. Admin.*, No. CV-23-02132-PHX-JAT, 2024 WL 3912705 (D. Ariz. Aug. 23, 2024).

Additionally, the ALJ noted that "[t]here is minimal evidence of treatment for carpal tunnel syndrome or any upper extremity impairment after the amended onset date, which suggests his symptoms improved with treatment."  (*Id.*)  The ALJ acknowledged that Scott D Swanson, M.D. with Hand Surgery Clinic noted that Plaintiff had "diminished sensation

to light touch." (*Id.* at 29; Doc. 9 at 129.) However, Dr. Swanson went on to note that Plaintiff's "protective sensation was intact," he "had abductor pollicis brevis (APB) strength of 5/5, and he could make bilateral composite fist and achieve full extension of all the fingers." (Doc. 8-3 at 29; Doc. 9 at 129.) Accordingly, Dr. Swanson advised Plaintiff to have surgery, which Plaintiff declined. (Doc. 8-3 at 30; Doc. 8-10 at 81.) As noted, a claimant refusing to seek treating can serve "as a basis for finding the complaint unjustified." *Chaudhry*, 688 F.3d at 672. Additionally, the ALJ found that the "claimant testified he could use his hands for only a couple of minutes at a time, but this is not mentioned to his treating providers and there is no reason to believe this would not be improved with appropriate treatment." (*Id.* at 31.)

Next, the ALJ made specific findings supported by clear and convincing reasons to discredit Plaintiff's testimony regarding the severity of his bilateral knee condition. Ultimately, the ALJ accommodated much of Plaintiff's testimony but ultimately concluded that "there is no reason to believe he could not sit six hours and stand and walk two hours during an eight hour day." (Doc. 8-3 at 31.) The ALJ noted that PA Joy "advised [that] the claimant could perform light work except he could stand and/or walk for at least two hours but less than six hours in an eight-hour day." (*Id.* at 30; Doc. 8-10 at 104.) This was corroborated by x-rays which showed "moderate to severe compartment narrowing bilaterally followed by a physical exam the next month revealing 5/5 strength, only mild laxity with varus/valgus stress at full extension, and no laxity with Lachman, anterior drawer test, and posterior drawer test." (Doc. 8-3 at 31; Doc. 9 at 4.)

Next, the ALJ made specific findings supported by clear and convincing reasons to discredit Plaintiff's testimony regarding the severity of his foot condition. Regarding Plaintiff's calcaneal spur, the ALJ noted as follows:

> X-rays of the left ankle obtained in November 2019 showed small calcaneal spur with distal tibia and fibula apparently intact, no occult fractures, apparently normal talus and calcaneus, and preserved articulations of the ankle and hindfoot region, and x-rays of the right foot in December 2021 showed no more than mild first metatarsophalangeal (MTP) joint osteoarthritis and very small plantar calcaneal enthesophyte (1F/6; 4F/43). Additionally, despite the bilateral calcaneal heel spurs, at an office visit for

- 11 -

discolored toenails in February 2022, manual muscle testing found 5/5 strength to all extrinsic foot muscles of the bilateral lower extremities and no tenderness to palpation of the bilateral feet (4F/27, 29).

(Doc. 8-3 at 30.)  The ALJ also noted that Plaintiff testified that he engaged in multiple activities requiring him to stand and walk such as shopping, housework, and yardwork. (*Id.* at 30–31; Doc. 8-8 at 37–41.)

Next, the ALJ made specific findings supported by clear and convincing reasons to discredit Plaintiff's testimony regarding the severity of his back condition.  The ALJ noted that "[i]n September 2022, the claimant presented to Evan Freedman, D.O., for evaluation and treatment" and presented with "slightly decreased 4/5 anterior tibial strength on the right, [but] 5/5 strength throughout the bilateral upper and lower extremities with normal reflexes and sensation intact" and "only mildly limited lumbar spine range of motion and normal gait." (Doc. 8-3 at 28; Doc. 9-1 at 136–137.)  At a follow-up appointment, Plaintiff was noted to be "healthy appearing and in no acute distress, . . . had 5/5 strength and 1/4 reflexes throughout the right lower extremity with sensation intact and straight leg raise[,] and lumbar facet loading negative bilaterally."  (Doc. 8-3 at 28; Doc 9-1 at 131–133.) Additionally, the ALJ relied on PA Joy's exam which found that Plaintiff's dorsolumbar spine's range of motion was within normal limits and that "the claimant's lumbar spine was normal including no radicular pain with straight leg-lift less than 60 degrees bilaterally and no shooting pain down the surface of the leg with hip flexion and knee extension in the sitting position with dorsiflexion of the foot, with the claimant able to stand, walk to, get on, and sit on the exam table without use of any assistive device." (Doc. 8-3 at 30; Doc. 8-10 at 103.)

Accordingly, the Court finds that the ALJ gave clear and convincing reasons supported by substantial evidence for not fully crediting Plaintiff's testimony regarding the severity of his symptoms.

## IV.    CONCLUSION

Accordingly,

**IT IS ORDERED** affirming the ALJ's October 19, 2023 decision.

**IT IS FURTHER ORDERED** directing the Clerk to enter final judgment consistent with this Order and close this case.

Dated this 11th day of March, 2026.

Honorable Susan M. Brnovich
United States District Judge